UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEIRON M. ELIAS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>J. KINROSS, et al.,<br><br>　　　　　Defendants. | No. 2:17-cv-2106 DB P<br><br><br>ORDER |

　　　　Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983 and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. Plaintiff's first amended complaint is before the court for screening.

**I.　　Application to Proceed In Forma Pauperis**

　　　　Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, the requests to proceed in forma pauperis will be granted.

　　　　Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time

the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

## II. Screening Requirement

The in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## III. Pleading Standard

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

////

////

////

**IV.    Plaintiff's Allegations**

At all times relevant to this action, plaintiff was a state prisoner housed at California Medical Facility ("CMF") in Vacaville, California. He names as defendants Correctional Officer ("CO") J. Kinross, Senior Hearing Officer Lt. S. Gilliam, Lt. J. Appleberry, Warden Robert Fox, Chief Appeals Officer M. Voong, and Captain Appeals Examiner H. Liu. Each defendant is named in his or her official and individual capacity.

Plaintiff's allegations may be fairly summarized as follows:

**A.    Confiscation of Ink**

Plaintiff is a practicing Wiccan. During the week of October 16, 2016, plaintiff was in the middle of a two-week religious ceremony involving colored ink, a feather, fasting, and bathing.

On October 16, 2016, CO Kinross searched plaintiff's cell and found the colored ink in plaintiff's locker. Believing it to be tattoo ink, CO Kinross issued a Rules Violation Report ("RVR") for possession of tattoo paraphernalia. At the November 5, 2016, hearing on the RVR conducted by Lt. Gilliam, plaintiff presented documentary evidence of the ink's religious purpose. Despite this evidence, Lt. Gilliam found plaintiff guilty.

Because of the guilty finding, plaintiff's custody points went up, he had to redo the religious rite causing him to lose almost 10 pounds, he was placed on a severe program loss, he was transferred to a dangerous prison, he failed his business management class due to the transfer, and he is experiencing stress because of the institutional transfer.

**B.    Inmate Grievances**

Plaintiff submitted an inmate grievance on November 16, 2016, Appeal No. 16-03389 ("Appeal 3389"), challenging the RVR and related guilty finding. Plaintiff argued that the ink was a necessary element of the Wiccan religious ceremony and again pointed to documentary evidence of the ink's religious purpose. Lt. Appleberry reviewed plaintiff's grievance at the second level of review. Despite an interview with a chaplain, who confirmed that ink is indeed used in Wiccan religious ceremonies, Lt. Appleberry upheld Lt. Gilliam's guilty finding on the ground that "inmates are not allowed to possess ink for any religious purpose in a prison setting." When plaintiff appealed to the third level of review, defendants Voong and Liu improperly

canceled Appeal 3389 due to time limitations even though plaintiff submitted a timely appeal.

Plaintiff appealed the cancellation in a separate inmate grievance, Appeal Log No. 17-01700 ("Appeal 1700"). Voong also canceled this appeal was untimely.

Plaintiff filed yet another inmate grievance challenging the cancelation of Appeal 1700, arguing that pursuant to the mailbox rule, his appeal was timely. Voong and Liu canceled this appeal by citing several provisions that plaintiff claims are irrelevant to his claim and/or appeal.

**C. Plaintiff's Claims**

Plaintiff accuses CO Kinross, Lt. Gilliam, and Lt. Appleberry of failing to properly investigate the purpose of the ink and of discriminating against him on the basis of his religion. Plaintiff claims Warden Fox has a responsibility to make sure that plaintiff's religious rights are protected, but he condoned these violations of plaintiff's rights. Lastly, he accuses Voong and Liu of refusing to properly process his grievances so as to prevent plaintiff from exhausting his administrative remedies.

Plaintiff claims his First and Fourteenth Amendment rights have been violated by the defendants' conduct. He also contends the RVR hearing was unfair. He seeks injunctive relief and damages.

**V. Discussion**

**A. Eleventh Amendment**

Plaintiff has sued all defendants in their official and individual capacities, and he seeks both injunctive relief and damages in this action. The Eleventh Amendment, however, bars plaintiff's claims for damages against defendants in their official capacity. See Confederated Tribes & Bands v. Locke, 176 F.3d 467, 469 (9th Cir. 1999) (damages claim against governor in his official capacity barred by Eleventh Amendment). Claims for injunctive relief against defendants in their official capacities and for damages in their individual capacities are not barred by the Eleventh Amendment.

**B. First Amendment Free Exercise**

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend I. The United States Court of Appeals for the Ninth Circuit summarizes the application of the Free Exercise Clause in a state prison context as follows:

> The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment, Everson v. Bd. of Educ. of Ewing Twp., 330 U.S. 1, 8 (1947), "prohibits government from making a law 'prohibiting the free exercise [of religion].'" Cruz v. Beto, 405 U.S. 319, 322 (1972) (per curiam) (alteration in original). The Supreme Court has repeatedly held that prisoners retain the protections of the First Amendment. See, e.g., O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); Pell v. Procunier, 417 U.S. 817, 822 (1974); Cruz, 405 U.S. at 322. A prisoner's right to freely exercise his religion, however, is limited by institutional objectives and by the loss of freedom concomitant with incarceration. O'Lone, 482 U.S. at 348.

Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013).

"To prevail on their Free Exercise claim, Plaintiffs must allege facts plausibly showing that the government denied them 'a reasonable opportunity of pursuing [their] faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" Id. (alteration in original) (quoting Cruz, 405 U.S. at 322). To implicate the Free Exercise Clause, a prisoner must show that the belief at issue is both "sincerely held" and "rooted in religious belief." Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994); see also Shakur, 514 F.3d 884–85 (noting the Supreme Court's disapproval of the "centrality" test and finding that the "sincerity" test in *Malik* determines whether the Free Exercise Clause applies). If the inmate makes his initial showing of a sincerely held religious belief, he must establish that prison officials substantially burdened the practice of his religion by preventing him from engaging in conduct that he sincerely believes is consistent with his faith. Shakur, 514 F.3d at 884–85.

Government action substantially burdens the exercise of religion when the action is "oppressive to a significantly great extent." Int'l Church of Foursquare Gospel v. City of San Leandro, 673 F.3d 1059, 1067 (9th Cir. 2011) (citation and internal quotation marks omitted). "That is, a 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." Id. (quoting San Jose Christian College v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004)). "A substantial burden exists where the governmental authority puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." Id. (citation and internal quotation marks omitted)

Plaintiff has adequately plead a First Amendment free exercise claim against CO Kinross, Lt. Gilliam, and Lt. Appleberry, who are accused of confiscating ink and/or refusing to return said ink that plaintiff claims is essential to the practice of his religion. Plaintiff's allegations as to Warden Fox, however, are too vague to state a claim.

5

### C. The Religious Land Use and Institutionalized Persons Act of 2000

The Religious Land Use and Institutionalized Persons Act ("RLUIPA") expands rights under the First Amendment's Free Exercise Clause, mandating that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... unless the government demonstrates that imposition of the burden on that person–
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a)(1)-(2).

Plaintiff must allege facts demonstrating that defendant substantially burdened the exercise of his religious beliefs. Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005). In any RLUIPA claim, one must first identify the "religious exercise" allegedly impinged upon, and then must ask whether the prison regulation or action at issue "substantially burdens" that religious exercise. Greene v. Solano County Jail, 513 F.3d 982, 987 (9th Cir. 2008).

"RLUIPA does not define 'substantial burden,' but [the Ninth Circuit] has held that 'a substantial burden on religious exercise must impose a significantly great restriction or onus upon such exercise.'" Hartmann, 707 F.3d at 1124–25 (citing San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004)). "Generally, the term 'substantial burden' in RLUIPA is construed in light of federal Supreme Court and appellate jurisprudence involving the Free Exercise Clause of the First Amendment prior to the Court's decision in Emp't Div. Dep't of Human Res. of Oregon v. Smith, 494 U.S. 872, 878-82 (1990)." Int'l Church of Foursquare Gospel, 673 F.3d at 1067 (citing Guru Nanak, 456 F.3d at 988). "In the context of a prisoner's constitutional challenge to institutional policies, this court has held that a substantial burden occurs 'where the state ... denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Hartmann, 707 F.3d at 1124–25 (citing Warsoldier v. Woodford, 418 F.3d 989, 995 (9th Cir. 2005)).

RLUIPA does not authorize money damages against state officials, regardless of whether they are sued in their official or individual capacities. See Jones v. Williams, 791 F.3d 1023, 1031

(9th Cir. 2015). The proper defendant for a RLUIPA claim is the official who could appropriately respond to a court order on injunctive relief should one ever be issued. See id.;

Plaintiff alleges a policy that "inmates are not allowed to possess ink for any religious purpose in a prison setting," and this policy inhibits his religious practices. This is sufficient to state a RLUIPA claim. Since the proper defendant for prospective injunctive relief is the one who is responsible for ensuring that said relief is carried out, see Pouncil v. Tilton, 704 F.3d 568, 576 (9th Cir. 2012), the Court finds that plaintiff has adequately asserted this claim against Warden Fox in his official capacity.

### D. Fourteenth Amendment Equal Protection

The Equal Protection Clause requires that an inmate who is an adherent of a minority religion be afforded a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts," Cruz v. Beto, 405 U.S. 319, 322 (1972), as long as the inmate's religious needs are balanced against the reasonable penological goals of the prison, O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987). See Allen v. Toombs, 827 F.2d 563, 568-69 (9th Cir. 1987). When challenging his treatment with regard to other prisoners, a prisoner must show that his treatment is invidiously dissimilar to that received by other inmates. More v. Farrier, 984 F.2d 269, 271-72 (8th Cir. 1993). If the inmate is receiving invidiously different treatment from other inmates, the Court must consider whether "the difference between the defendants' treatment of [the inmate] and their treatment of [other] inmates is 'reasonably related to legitimate penological interests.'" Shakur, 514 F.3d at 891.

Plaintiff alleges his equal protection rights have been violated by the policy that prohibits inmates from possessing ink for any religious purpose. Plaintiff contends this is discrimination, but he does not allege sufficient facts to demonstrate that he was denied the same opportunities as other inmates because of his religious beliefs. Plaintiff therefore fails to state an Equal Protection claim.

### E. Eighth Amendment Due Process

There are five procedural requirements of Due Process for prison disciplinary proceedings. Wolff v. McDonnell, 418 U.S. 539 (1974). First, "written notice of the charges

7

must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." Id. at 564. Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." Id. Third, "there must be a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action." Id. Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566. Fifth, "[w]here an illiterate inmate is involved...or where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or...to have adequate substitute aid...from the staff or from a[n]...inmate designated by the staff." Id. at 570. In addition, Due Process requires that the decision be supported by "some evidence." Superintendent v. Hill, 472 U.S. 445, 455 (1985).

The only issue underlying plaintiff's due process claim is premised on the "some evidence" requirement, which plaintiff asserts was absent here since the defendants failed to give due weight to that evidence showing the confiscated ink was for a religious purpose and not for tattooing. But "[t]he Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." Hill, 472 U.S. at 457. Here, that evidence was plaintiff's possession of ink, which he does not dispute. This was sufficient to satisfy the "some evidence" standard. Accordingly, plaintiff fails to state a due process claim.

### F. Inmate Grievance Process

Plaintiff's claims against defendants Voong and Liu are premised on their processing of plaintiff's inmate grievance and appeals at the third level of review. Generally, inmates have no separate constitutional right to a prison grievance or appeal system. See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). A prison

official's denial of a grievance does not itself violate the constitution. Evans v. Skolnik, 637 Fed. Appx. 285, 288 (9th Cir. 2015), cert. dism'd, 136 S. Ct. 2390 (2016). Thus, the denial, rejection, or cancellation of a grievance does not constitute a due process violation. See, e.g., Wright v. Shannon, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegations that prison officials denied or ignored his inmate appeals failed to state a cognizable claim under the First Amendment); Towner v. Knowles, 2009 WL 4281999 at *2 (E.D. Cal. Nov. 20, 2009) (plaintiff's allegations that prison officials screened out his inmate appeals without any basis failed to indicate a deprivation of federal rights); Williams v. Cate, 2009 WL 3789597, at *6 (E.D. Cal. Nov. 10, 2009) ("Plaintiff has no protected liberty interest in the vindication of his administrative claims."). Thus, plaintiff may not impose liability on a defendant simply because he or she played a role in processing plaintiff's inmate appeals or grievances.

### G. Access to Court Claim

Plaintiff's allegations against Voong and Liu may be liberally construed to state an access to court claim. Prisoners have a constitutional right to access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996). The right is limited to the filing of direct criminal appeals, habeas petitions, and civil rights actions. Id. at 354. Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a suit that cannot now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 412-15 (2002); see also Silva v. Di Vittorio, 658 F.3d 1090, 1102 (9th Cir. 2011) (differentiating "between two types of access to court claims: those involving prisoners' right to affirmative assistance and those involving prisoners' rights to litigate without active interference.").

However, plaintiff must allege "actual injury" as the threshold requirement to any access to courts claim. Lewis, 518 U.S. at 351-53; Silva, 658 F.3d at 1104. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Lewis, 518 U.S. at 348; see also Jones v. Blanas, 393 F.3d 918, 936 (9th Cir. 2004) (defining actual injury as the "inability to file a complaint or defend against a charge"). The failure to allege an actual injury is "fatal." Alvarez v. Hill, 518 F.3d 1152, 1155 n.1

(9th Cir. 2008) ("Failure to show that a 'non-frivolous legal claim had been frustrated' is fatal.") (quoting Lewis, 518 U.S. at 353 & n.4). Plaintiff has not alleged actual injury and therefore fails to state an access to court claim.

**VI.    Conclusion**

Based on the foregoing, plaintiff has sufficiently alleged a First Amendment free exercise claim against defendants CO Kinross, Lt. Gilliam, and Lt. Appleberry, and a RLUIPA claim against Warden Fox. All other claims and defendants are subject to dismissal.

The Court will grant plaintiff an opportunity to file an amended complaint. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If plaintiff does not wish to amend, he may instead file a notice of voluntary dismissal, and the action then will be terminated by operation of law. Fed. R. Civ. P. 41(a)(1)(A)(i). Alternatively, plaintiff may forego amendment and notify the Court that he wishes to stand on his complaint. See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1064-65 (9th Cir. 2004) (plaintiff may elect to forego amendment). If the last option is chosen, the undersigned will issue findings and recommendations to dismiss the aforementioned claims and defendants, plaintiff will have an opportunity to object, and the matter will be decided by a District Judge. No further opportunity to amend will be given by the undersigned.

If plaintiff opts to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 556 U.S. at 677-78. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555 (2007)). Plaintiff should note that although he has been granted the opportunity to amend his complaint, it is not for the purposes of adding new and unrelated claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully review this screening order and focus his efforts on curing the deficiencies set forth above.

Finally, plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves a function in the case. Id. Therefore, in an amended complaint, as in an original complaint, each claim and the

involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly titled, in bold font, "First Amended Complaint," reference the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith;

3. Within thirty (30) days from the date of service of this order, plaintiff must file either a second amended complaint curing the deficiencies identified by the Court in this order, a notice of voluntary dismissal, or a notice of election to stand on the first amended complaint; and

4. If plaintiff fails to file a second amended complaint or a notice of voluntary dismissal, the Court will issue findings and recommendations to dismiss all claims except those found cognizable in this order.

Dated: October 29, 2018

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

/DLB7;
DB/Inbox/Substantive/elia2106.scrn