UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEIRON M. ELIAS, | No. 2:17-cv-02106-WBS-DB P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| J. KINROSS, et al., | |
| Defendants. | |

Defendants' motion for summary judgment is before the court. (ECF No. 38.) For the reasons set forth, it is recommended the motion be granted.

**I. PROCEDURAL BACKGROUND**

On October 30, 2018, the court screened plaintiff's complaint pursuant to 28 U.S.C. § 1915A and found it stated cognizable claims under the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") based on the alleged confiscation of plaintiff's bottled ink used for religious purposes. (ECF No. 11.) By order signed on April 2, 2019, the court ordered that this case proceed only on (1) a First Amendment free exercise claim against CO Kinross, Lt. Gilliam, and Lt. Appleberry, and (2) a claim under RLUIPA against Warden Fox. (ECF No. 23.)

On March 11, 2021, defendants filed a motion for summary judgment arguing that under the undisputed evidence, they did not violate the RLUIPA or plaintiff's free exercise rights under

1

the First Amendment. (ECF No. 40.) Plaintiff has filed an opposition to which defendants filed a reply. (ECF Nos. 51, 53.)

## II. LEGAL STANDARD

Summary judgment is appropriate when the moving party shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to obtain summary judgment, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P.

56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

**III.  UNDISPUTED FACTS[1]**

At all times relevant to this action, plaintiff was housed at California Medical Facility ("CMF"). On October 16, 2016, defendant Correctional Officer Kinross conducted a search of

---

[1] The facts discussed are undisputed except where otherwise noted.

3

plaintiff's cell and confiscated two bottles of colored ink- one blue and the other red. (Plaintiff's Response to Defendants' Undisputed Facts (ECF No. 51 at 24-29) (hereinafter "UF") 7, 8.) Officer Kinross issued plaintiff a rules violation report ("RVR")- designated log number 1153126- charging possessing tattoo paraphernalia in violation of Title 15 of the California Code of Regulations section 3006(c)(16). (UF 10.)

Plaintiff had not requested permission or any accommodation to possess a bottle of ink prior to Officer Kinross' ink confiscation on October 16, 2016. (UF 21.) Plaintiff submits evidence in support of his position that he did not need to request such permission or an accommodation to possess pen ink blown into eyedrop bottles, because pen ink and eyedrop bottles were both allowable items in the institution. (UF 21.) Defendants maintain that the ink, once removed from pens and bottled, constituted tattoo paraphernalia and thus contraband (Kinross Decl. (ECF No. 40-4 at 29) at ¶ 8.)

Plaintiff appeared for a hearing on November 6, 2016 pertaining to RVR log number 1153126. (UF 11.) Defendant Gilliam was the senior hearing officer who presided over the November 6, 2016 RVR hearing. (UF 12.) During the hearing, plaintiff pled not guilty, stating, in part, his defense that the ink was not tattoo paraphernalia, but rather, was used for religious purposes, and further that the ink inside the bottles was not tattoo paraphernalia because it was nothing more than pen ink that had been blown into bottles with a small amount of oil added for the purpose of drawing sacred pentacle of Solomon in a religious ritual. (UF 13.) Defendant Gilliam found plaintiff guilty as charged in the RVR based on Officer Kinross' written RVR statement and plaintiff's admission that he possessed the bottles, notwithstanding his explanation that he possessed the ink for religious purposes. (UF 14-15.)

Plaintiff subsequently submitted appeal log number CMF-M-16-03389 in which he grieved that the ink confiscation and adjudication of RVR log number 1153126 were improper. (UF 16.) Defendant Appleberry conducted the second-level review of appeal log number CMF-M-16-03389. (UF 17.) As part of this review, Appleberry interviewed plaintiff and various staff, including the chaplain. (UF 18-19.) Appleberry denied plaintiff's appeal and affirmed the guilty finding in RVR log number 1153126. (UF 20.)

At the time in question, tattoo paraphernalia was prohibited because the practice of tattooing poses significant public health risks to inmate population, including contributing to the spread of Hepatitis C or diseases stemming from unsanitary practices. (UF 4; Kinross Decl., ¶ 8.) Given the institutional interest in preventing the spread of disease, CDCR adopted a policy prohibiting tattooing and possession of related paraphernalia, codified in Department of Operations Manual ("DOM") section 52080.5. (Id.) The policy prohibiting tattooing and possession of related paraphernalia does not prohibit the possession of any and all ink, such that inmates are allowed to possess ink for legitimate uses such as writing and drawing. (UF 5.) It is only when the ink possessed amounts to tattoo paraphernalia that it is contraband. (UF 5.)

Under defendants' evidence, bottled ink is problematic because of its ready use for tattooing. (Kinross Decl., ¶ 7.) Under plaintiff's evidence, bottled, colored pen ink of the type confiscated from his cell would not be used for tattooing because of toxicity and because an experienced tattoo artist would know that such ink is oil based, and thus could not be used to achieve a lasting tattoo. (UF 2, 3, 5-7.) Under plaintiff's evidence, prison tattoo artists use ink such as Higgins or Black Cat, which is prohibited in California prisons, or homemade "soot" ink made by burning plastic or a candle to collect soot, and mixing soot with water and a binding agent, rather than bottled, colored pen ink. (UF 2, 3, 5-7.)

## IV. DISCUSSION

### A. RLUIPA

The RLUIPA provides "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, ... unless the government demonstrates that imposition of the burden on that person ... is in furtherance of a compelling governmental interest ... and is the least restrictive means of furthering that ... interest." 42 U.S.C. § 2000cc-1(a). "RLUIPA defines 'religious exercise' to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1124 (9th Cir. 2013); 42 U.S.C. § 2000cc-5(7). The government imposes a "substantial burden" on religious exercise when it puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs." Hartmann, 707 F.3d at 1125 (internal

5

1 quotation marks and citation omitted).

2     A court reviewing a claim under the RLUIPA "begin[s] by identifying the 'religious
3 exercise' allegedly impinged upon." <u>Greene v. Solano Cty. Jail</u>, 513 F.3d 982, 987 (9th Cir.
4 2008). As explained in <u>Cutter v. Wilkinson</u>, "[T]he 'exercise of religion' often involves not only
5 the belief and profession but the performance of ... physical acts [such as] assembling with others
6 for a worship service [or] participating in sacramental use of bread and wine." 544 U.S. 709, 720
7 (2005) (internal quotation marks and citation omitted). In <u>Shakur v. Schriro</u>, for example, the
8 religious exercise at issue was the practice of abstaining from eating haram meat. See 514 F.3d
9 878, 888 (9th Cir. 2008).

10     In this case, plaintiff puts forth evidence that he used bottled pen ink in the colors of red
11 and blue for drawing sacred pentacles of Solomon as part of a religious rite for his practice of the
12 Wicca religion. The court finds the religious exercise at issue is drawing.

13     The next inquiry is "whether the prison regulation at issue 'substantially burdens'" the
14 religious exercise at issue. <u>Greene</u>, 513 F.3d at 987. A "'substantial burden' on 'religious
15 exercise' ... impose[s] a significantly great restriction or onus upon such exercise." <u>Warsoldier v.
16 Woodford</u>, 418 F.3d 989, 995 (9th Cir. 2005) (internal quotation marks and citation omitted). A
17 substantial burden exists "where the state ... denies [an important benefit] because of conduct
18 mandated by religious belief, thereby putting substantial pressure on an adherent to modify his
19 behavior and to violate his beliefs." <u>Id.</u> (internal quotation marks and citation omitted). In other
20 words, "a prison policy that 'intentionally puts significant pressure on inmates ... to abandon their
21 religious beliefs ... imposes a substantial burden on [the inmate's] religious practice.'" <u>Shakur</u>,
22 514 F.3d at 889 (citation omitted). In <u>Warsoldier</u>, for example, the Ninth Circuit held that a
23 prison's grooming policy substantially burdened the plaintiff's religious beliefs by pressuring him
24 to cut his hair and thereby abandon those beliefs. 418 F.3d at 996. In <u>Greene</u>, the court held that a
25 prison's policy of prohibiting the plaintiff "from attending group religious worship services
26 substantially burdened his ability to exercise his religion." 513 F.3d at 988.

27     Based on the uncontested facts, the court finds defendant did not substantially burden
28 plaintiff's exercise of religion by confiscating plaintiff's possession of bottled ink, deeming it

tattoo paraphernalia, and disciplining him accordingly. The evidence is undisputed that plaintiff may possess pen ink for drawing, just not bottles of ink such as those found in his cell.

Plaintiff puts forth evidence that bottled pen ink of the type confiscated from his cell would not be used for tattooing, but this evidence and argument fails to show that defendants' actions substantially burdened his religious practice, because it remains undisputed that plaintiff may possess and use non-bottled pen ink for the purpose of drawing. The fact that plaintiff's preferred ink for drawing may be pen ink blown into bottles with a small amount of oil added does not necessitate a finding that plaintiff's exercise of religion was substantially burdened, because there is no evidence that plaintiff's religious beliefs mandate him to use bottled ink of the type confiscated. Although the confiscation of the ink and the resulting disciplinary action was without a doubt inconvenient and undesirable to plaintiff, there is no evidence that defendants' actions put substantial, or any, pressure on him to violate his religious beliefs.

Because the court finds that defendant's actions did not substantially burden plaintiff's exercise of religion, the court need not reach whether those actions furthered a compelling government interest or whether they were the least restrictive means of doing so.

### B. FREE EXERCISE CLAUSE

As with RLUIPA claims, a prisoner asserting a First Amendment "free exercise claim must show that the government's action ... substantially burdens the ... practice of her religion." Jones v. Williams, 791 F.3d 1023, 1031 (9th Cir. 2015) (citation omitted). Under the First Amendment, "[a] substantial burden ... place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." Id. (internal quotation marks and citations omitted). "[A]lleged infringements of prisoners' free exercise rights [are] 'judged under a "reasonableness" test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights.'" Id. at 1032 (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987)). "The challenged conduct is valid [under the First Amendment] if it is reasonably related to legitimate penological interests." Id. (internal quotation marks and citations omitted).

For the same reasons discussed above, the uncontested facts show that defendants' actions did not substantially burden plaintiff's practice of religion and thereby impinge on his First Amendment rights. The court therefore does not reach whether such actions were reasonably related to a legitimate penological interest.

## VI. CONCLUSION AND RECOMMENDATION

In accordance with the above, IT IS ORDERED that plaintiff's request for an extension of time to file his opposition (ECF No. 49) is GRANTED, in part, to the extent that plaintiff's opposition is deemed timely filed; however, the request for a court-ordered laptop is denied.

In addition, IT IS RECOMMENDED that defendants' motion for summary judgment be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 20, 2021

elia2106.msj

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE