1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KEIRON M. ELIAS,                        No.  2:17-cv-2106 WBS DB P

12              Plaintiff,                   ORDER VACATING FINDINGS AND
                                             RECOMMENDATIONS (ECF No. 54)
13        v.
                                             AND
14   J. KINROSS, et al.,
                                             AMENDED FINDINGS AND
15              Defendants.                  RECOMMENDATIONS

16

17        Defendants' motion for summary judgment (ECF No. 40) is before the undersigned for

18   further findings and recommendations. (See ECF No. 65.) Having reviewed the supplemental

19   briefing filed by the parties, the undersigned will vacate the findings and recommendations filed

20   on August 23, 2021. In the amended findings and recommendations that follow, the undersigned

21   recommends the court grant in part and deny in part the defendants' motion for summary

22   judgment.

23   **I. PROCEDURAL BACKGROUND**

24        Plaintiff's complaint stated cognizable claims under the Free Exercise Clause of the First

25   Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") based on

26   the alleged confiscation of plaintiff's bottled ink used for his religious exercise. (ECF No. 1.)

27   Pursuant to the court's order of April 2, 2019 (ECF No. 23), this case has proceeded only on (1) a

28   First Amendment free exercise claim against Correctional Officer Kinross, Lieutenant Gilliam,

                                              1

1  and Lieutenant Appleberry, and (2) a claim under RLUIPA against Warden Fox for prospective

2  injunctive relief.

3          On March 11, 2021, defendants moved for summary judgment arguing the undisputed

4  evidence showed they did not violate the RLUIPA or plaintiff's free exercise rights under the

5  First Amendment. (ECF No. 40.) Plaintiff opposed the motion for summary judgment on August

6  8, 2021. (ECF No. 52.) Defendants filed a reply. (ECF No. 53.)

7          On August 23, 2021, the undersigned issued findings and recommendations to grant the

8  defendants' motion for summary judgment based on a finding that plaintiff's religious exercise

9  had not been substantially burdened. (ECF No. 54 at 6-8.) On October 27, 2021, the district judge

10  assigned to this case appointed limited-purpose counsel for plaintiff to file supplemental briefing

11  in opposition to defendants' motion for summary judgment and objecting to the findings and

12  recommendations. (ECF No. 56.)

13          On March 20, 2022, plaintiff, through counsel, filed a supplemental opposition to

14  defendants' motion for summary judgment and the pending findings and recommendations. (ECF

15  No. 60.) Defendants filed their supplemental reply on April 4, 2022. (ECF No. 61.) Plaintiff filed

16  a pro se sur-reply on April 25, 2022. (ECF No. 64.)

17          On May 2, 2022, this matter was referred to the undersigned for further findings and

18  recommendations addressing (1) whether plaintiff has raised a genuine issue of material fact as to

19  whether defendants' actions substantially burdened his religious beliefs, and (2) if so, whether

20  plaintiff's evidence raises a triable issue of fact as to either his RLUIPA or Free Exercise claims.

21  (ECF No. 65.)

22  **II.  LEGAL STANDARDS**

23          Summary judgment is appropriate when the moving party shows there is "no genuine

24  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

25  Civ. P. 56(a). In order to obtain summary judgment, "[t]he moving party initially bears the burden

26  of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627

27  F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The

28  moving party may accomplish this by "citing to particular parts of materials in the record,

including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

1    trial.'" <u>T.W. Elec. Serv.</u>, 809 F.2d at 630 (quoting <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S.

2    253, 288-89 (1968)). Thus, the "purpose of summary judgment is to pierce the pleadings and to

3    assess the proof in order to see whether there is a genuine need for trial." <u>Matsushita</u>, 475 U.S. at

4    587 (citation and internal quotation marks omitted).

5          "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

6    court] draw[s] all inferences supported by the evidence in favor of the non-moving party." <u>Walls</u>

7    <u>v. Central Contra Costa Transit Auth.</u>, 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is

8    the opposing party's obligation to produce a factual predicate from which the inference may be

9    drawn. <u>Richards v. Nielsen Freight Lines</u>, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to

10   demonstrate a genuine issue, the opposing party "must do more than simply show that there is

11   some metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586 (citations

12   omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the

13   non-moving party, there is no 'genuine issue for trial.'" <u>Id.</u> at 587 (quoting <u>First Nat'l Bank</u>, 391

14   U.S. at 289).

15   **III.  UNDISPUTED FACTS[1]**

16         At all times relevant to this action, plaintiff was housed at California Medical Facility

17   ("CMF"). On October 16, 2016, defendant Correctional Officer Kinross conducted a search of

18   plaintiff's cell and confiscated two bottles of colored ink. (<u>See</u> Supplemental Reply in Support of

19   Defendants' Statement of Undisputed Facts (ECF No. 61-1) (hereinafter "UF") 8.) Officer

20   Kinross issued plaintiff a rules violation report ("RVR") designated log number 1153126

21   charging possessing tattoo paraphernalia in violation of Title 15 of the California Code of

22   Regulations section 3006(c)(16). (UF 10.)

23         At the relevant time, CDCR prohibited tattoo paraphernalia. (UF 4.) The policy

24   prohibiting tattooing and possession of related paraphernalia is codified in Department of

25   Operations Manual ("DOM") section 52080.5. (UF 4.) Tattooing and possession of related

26

27   ─────────────────────
     [1] Plaintiff's supplemental opposition attempted to dispute UF 3, 4, 5, 6, and 8, but the evidence
     cited does not genuinely dispute the matters set forth. (<u>See</u> ECF No. 61-1 at 3.) These facts are
28   undisputed as referenced herein.

paraphernalia is prohibited because the practice of tattooing poses significant public health risks to inmate population, including contributing to the spread of Hepatitis C or other diseases stemming from unsanitary practices. (UF 3.)

At the relevant time, inmates were allowed to possess ink pens and unbottled pen ink for writing and drawing. (UF 5, 44.) Plaintiff possessed two small bottles of ink for purposes related to his practice of Wiccanism. (UF 29, 33.) Plaintiff's religious practices require him to write or draw Sacred Pentacles of Solomon using a feather dipped in colored ink. (UF 31, 33.)

Plaintiff had not requested a special accommodation to possess ink in bottles prior to Officer Kinross' ink confiscation on October 16, 2016. (UF 21.) Separately, eye drop bottles and ink pens were allowable items for purchase. (UF 44.) When a quantity of ink possessed by an inmate amounts to tattoo paraphernalia, then it is deemed contraband. (UF 5.)

Plaintiff appeared for a hearing pertaining to RVR log number 1153126 on November 6, 2016. (UF 11.) Defendant Gilliam presided over the RVR hearing as the senior hearing officer. (UF 12.) Plaintiff presented a defense that his bottled ink was not tattoo paraphernalia, but rather, pen ink blown into eye drop bottles used for his religious purposes. (UF 13.) Defendant Gilliam found plaintiff guilty of possessing tattoo paraphernalia based on the written RVR statement and plaintiff's admission he possessed the bottles, notwithstanding his explanation he used the ink for his religious purposes and not for tattooing. (UF 14-15.)

Plaintiff submitted appeal log number CMF-M-16-03389, in which he grieved that the ink confiscation and adjudication of RVR log number 1153126 were improper. (UF 16.) Defendant Appleberry conducted the second-level review of appeal log number CMF-M-16-03389. (UF 17.) Appleberry interviewed plaintiff and staff, including the chaplain, and denied plaintiff's appeal, thereby affirming the guilty finding for RVR log number 1153126. (UF 18-20.)

## IV.  DISCUSSION

### A.  FREE EXERCISE CLAUSE

#### 1.  Applicable Standards

"The First Amendment, applicable to the States by reason of the Fourteenth Amendment... prohibits government from making a law 'prohibiting the free exercise (of religion).'" Cruz v.

1    <u>Beto</u>, 405 U.S. 319, 322 (1972) (per curiam) (citation omitted). In order to establish a cause of

2    action under the Free Exercise Clause, a plaintiff must show that a restriction substantially

3    burdened the practice of his religion by preventing him from engaging in conduct he sincerely

4    believes is consistent with his faith without any justification reasonably related to interests

5    concerning the care of committed persons. <u>Shakur v. Schriro</u>, 514 F.3d 878, 884-85 (9th Cir.

6    2008).

7         "'When a prison regulation impinges on inmates' constitutional rights, the regulation is

8    valid if it is reasonably related to legitimate penological interests.'" <u>Shakur</u>, 514 F.3d at 884

9    (quoting <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987)). In <u>Turner</u>, the Supreme Court articulated four

10    factors to consider in determining whether a prison regulation is valid: (1) whether there is a

11    "valid, rational connection between the prison regulation and the legitimate governmental interest

12    put forward to justify it"; (2) whether there are "alternative means of exercising the right that

13    remain open to prison inmates"; (3) whether "accommodation of the asserted constitutional right"

14    will "impact...guards and other inmates, and on the allocation of prison resources generally"; and

15    (4) whether there is an "absence of ready alternatives" versus the "existence of obvious, easy

16    alternatives." <u>Shakur</u>, 514 F.3d at 882 (citing <u>Turner</u>, 482 U.S. at 89-90).

17                **2. Disputes of Material Fact**

18         Defendants do not dispute plaintiff's evidence that he practices Wiccanism or the sincerity

19    of his belief that using a feather and ink for writing and drawing is religious exercise consistent

20    with his practice. Instead, defendants argue the policy prohibiting possession of ink-filled bottles

21    did not substantially burden plaintiff's religious practice because plaintiff was allowed to possess

22    and use ink other than bottled ink. (ECF No. 40-2 at 6-7.) Defendants argue plaintiff fails to put

23    forth evidence demonstrating "why ink less than what could fit within the confiscated bottles"

24    was insufficient to allow plaintiff "to practice his Wicca Faith." (<u>Id.</u>) Defendants argue plaintiff

25    was not foreclosed from his religious exercise because he could have used ink for his religious

26    practice and avoided violating CDCR policy by only "possess[ing] ink not reasonably likely to be

27    used for tattoo purposes." (<u>Id.</u>)

28    ////

1    The policy at issue prohibited "[t]attooing or possession of tattoo paraphernalia" and did

2    not itself set forth what constitutes a violation. (ECF No. 40-4 at 35.) Under some of defendants'

3    evidence, only bottles filled "beyond a certain volume" would be found to violate the policy. (See

4    ECF No. 40-4 at 56 (Appleberry Decl. ¶¶ 6, 10-11).) Under other evidence, however, "bottled ink

5    is deemed to be tattoo paraphernalia and, therefore, contraband." (ECF No. 40-4 at 29 (Kinross

6    Decl. ¶ 6; see also ¶ 7 "I am unaware of any exceptions").)

7    It is currently undisputed that plaintiff sincerely believed his religious practice required

8    him to write or draw using a feather and ink rather than ink pens. (UF 31, 33.) When his bottles of

9    ink were confiscated as contraband, plaintiff became unable to continue his religious practice of

10   using an ink-dipped feather. (UF 4, 5, 8.) This burden was more than a temporary inconvenience

11   because it was not resolved after plaintiff presented evidence that he possessed the ink in bottles

12   only for his religious purposes. (UF 13-15.) Although defendants argue plaintiff could have

13   engaged in the religious exercise at issue without violating CDCR's anti-tattoo policy, on the

14   record evidence, the court could only speculate as to how plaintiff might have used an ink-dipped

15   feather without violating the policy. A triable issue of fact exists as to whether plaintiff's religious

16   exercise was substantially burdened. The next inquiry is whether the prohibiting policy

17   reasonably relates to a legitimate penological interest. See Turner, 482 U.S. at 89.

18   Considering the first Turner factor, a rational nexus exists between prohibiting plaintiff

19   from possessing bottled ink and CDCR's legitimate health and security concerns. The practice of

20   tattooing poses significant public health risks to inmate population, including contributing to the

21   spread of Hepatitis C or other diseases stemming from unsanitary practices. (UF 3.) It is

22   undisputed that bottled ink is problematic because of its possible ready use for tattooing and the

23   difficulty in distinguishing between honest and pretextual explanations as to the nature and

24   purpose of bottled ink possessed by an inmate. (UF 6; see also ECF No. 40-4 at 29 (Kinross

25   Decl., ¶ 7).)[2] The first Turner factor weighs in favor of defendants.

26

27   [2] Plaintiff submitted evidence that an experienced tattoo artist would not use bottled pen ink of
     the type confiscated from plaintiff's cell for tattooing because of toxicity and because it would not
     achieve a lasting tattoo. (ECF No. 51 at 33-34, 38-39.) Nevertheless, a rational nexus exists
28   between the prohibition of all bottled ink and CDCR's legitimate penological interests.

The second Turner factor considers whether the plaintiff "has 'alternative means by which he can practice his religion' or is 'denied all means of religious expression.'" Shakur, 514 F.3d at 886 (quoting Ward v. Walsh, 1 F.3d 873, 877 (9th Cir. 1993)) (civil detainee had "numerous other means of practicing his religion" where he could keep a copy of the Qur'an in his cell, along with a prayer rug and up to seven religious items provided they did not pose a threat to the safe, secure, and orderly operation of the institution). There is no evidence plaintiff was foreclosed from pursuing any other means of practicing his faith. This second Turner factor weighs in favor of defendants.

The third Turner factor considers the impact accommodation would have on staff and other inmates, as well as the allocation of institutional resources generally. Defendants do not specifically address this factor. Defendants note plaintiff had not requested an accommodation for his religious practice. (ECF No 40-2 at 11.) The undisputed facts do not indicate such a request would have been granted. The court recognizes the substantial undertaking involved in running a secure facility and gives deference to the institution's assessment of the burden on operations. See Shakur, 514 F.3d at 887. Bottled ink is problematic because of its possible ready use for tattooing and the difficulty in distinguishing between honest and pretextual explanations for its use. But the record is devoid of evidentiary support for the court to conclude an accommodation would be disruptive or present more than a de minimis burden. This factor does not weigh in defendants' favor.

For the final Turner factor, the court considers whether there are obvious, easy alternatives indicating the institution's response is exaggerated. It is plaintiff's burden to show there are obvious, easy alternatives to the restriction on what religious items he was allowed to possess. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 350 (1987); Mauro v. Arpaio, 188 F.3d 1054, 1063 (9th Cir. 1999). Because plaintiff has not identified any obvious, easy alternatives, this factor weighs in favor of defendants.

Construing the evidence in the light most favorable to plaintiff, three out of four Turner factors weigh in favor of defendants. However, the record evidence does not allow the court to determine whether an accommodation would place more than a de minimis burden on the

8

1    institution. If an accommodation would not be overly disruptive or present more than a de

2    minimis burden, then the policy likely does not reasonably relate to the legitimate penological

3    interests addressed. Unresolved questions of material fact prevent entry of summary judgment.

4    See Shakur, 514 F.3d at 887; see also Hunafa v. Murphy, 907 F.2d 46, 48 (7th Cir. 1990) (finding

5    balance "too close for summary judgment to be proper" based upon "brief affidavit… that

6    summarizes the prison's concerns but makes no attempt to estimate their magnitude in relation to

7    the plaintiff's religious claims").

8                    **3.  Personal Participation of the Individual Defendants**

9           Finding triable issues of fact as to whether plaintiff's religious exercise was substantially

10   burdened and whether the policy at issue was reasonably related to legitimate penological

11   interests, the court considers the defendants' personal involvement for the claimed First

12   Amendment violation. Plaintiff must demonstrate that each named defendant personally

13   participated in the deprivation of his First Amendment rights. See Ashcroft v. Iqbal, 556 U.S.

14   623, 676-77 (2009).

15          Defendants argue Kinross confiscated the bottles of ink and issued the RVR pursuant to

16   CDCR's reasonable policies and procedures. (ECF No. 40-2 at 8.) Defendants argue Gilliam, in

17   finding plaintiff guilty of possessing tattoo paraphernalia as charged in the RVR, merely enforced

18   these established policies and procedures. (Id. at 8.) As set forth, defendants failed to show they

19   acted pursuant to a constitutionally valid policy. Material disputes of fact prevent the entry of

20   summary judgment in favor of defendants Kinross and Gilliam.

21          Defendants assert Appleberry was not personally involved in the alleged First Amendment

22   violation because his relevant conduct was limited to his review and decision in appeal log

23   number CMF-M-16-03389. (ECF No. 40-2 at 9-10.) Plaintiff responds that Appleberry was

24   personally involved because he affirmed the RVR for which plaintiff was disciplined and was "a

25   necessary part of the chain" that "result[ed] in [plaintiff] having to be transferred to a more

26   restrictive prison setting without the college program he was involved with, causing emotional

27   damage to him as stated in his deposition and declarations." (ECF No. 60 at 15.)

28   ////

1     A prison official's mere administrative review of a prisoner's appeal does not generally

2  serve as the basis for the official's liability under 42 U.S.C. § 1983. See George v. Smith, 507

3  F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does

4  not cause or contribute to the violation."); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999)

5  (prison official whose only role involved the denial of a prisoner's administrative grievance

6  cannot be held liable under § 1983), cert. denied, 530 U.S. 1264 (2000). Liability may be found if

7  there is an ongoing constitutional violation and the prison official responding to an administrative

8  appeal had the authority and opportunity to prevent the ongoing violation yet failed to prevent it.

9  See Taylor v. List, 880 F.2d at 1045 (supervisory official liable under § 1983 if he or she knew of

10  a violation and failed to act to prevent it). On the other hand, "merely denying a grievance

11  without some decision-making authority or ability to resolve the underlying issue grieved is not

12  enough to establish personal participation." Jackson v. State of Nev., No. 2:16-cv-0995-APG-

13  NJK, 2019 WL 6499106, at *7 (D. Nev. Dec. 3, 2019); accord Colwell v. Bannister, 763 F.3d

14  1060, 1065 (9th Cir. 2014) (reasonable jury could find doctor personally participated in refusing

15  treatment through denial of inmate's grievance based on administrative policy); Snow v.

16  McDaniel, 681 F.3d 978, 989 (9th Cir. 2012) (review of grievance was sufficient to demonstrate

17  warden and associate warden were aware of inmate's serious medical condition and failed to act

18  to prevent further harm), overruled on other grounds in Peralta v. Dillard, 744 F.3d 1076 (9th Cir.

19  2014).

20     Appleberry, who was a correctional lieutenant, determined the RVR was "properly

21  adjudicated" and "staff complied with due process guidelines." (ECF No. 40-4 at 55, 57

22  (Appleberry Decl. ¶¶ 2, 10).) As part of the review, Appleberry interviewed the Chaplain, who

23  confirmed "inmates are not allowed to possess ink-filled bottles" and plaintiff "had not obtained

24  approval to possess the confiscated ink." (Id. at 58.) There is no evidence Appleberry held

25  decision-making authority regarding the prohibition of plaintiff's ink-filled bottles as tattoo

26  paraphernalia or their designation as contraband. Plaintiff presents no evidence from which a

27  reasonable jury could conclude that Appleberry's investigation and denial of the administrative

28  appeal proximately caused the alleged First Amendment violation. In this instance, Appleberry's

1 conduct in investigating and denying the administrative appeal does not raise a question of

2 material fact as to his personal participation in the claimed First Amendment violation. See, e.g.,

3 George, 507 F.3d at 609-10. The undersigned will recommend the court grant summary judgment

4 only in Appleberry's favor on plaintiff's First Amendment Free Exercise claim.

5       **B.  RLUIPA**

6       The RLUIPA provides "[n]o government shall impose a substantial burden on the

7 religious exercise of a person residing in or confined to an institution, ... unless the government

8 demonstrates that imposition of the burden on that person ... is in furtherance of a compelling

9 governmental interest ... and is the least restrictive means of furthering that ... interest." 42 U.S.C.

10 § 2000cc-1(a). RLUIPA defines "religious exercise" to include "any exercise of religion, whether

11 or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7).

12       Exercise of religion protected under RLUIPA includes the performance of physical acts

13 such as assembling with others for a worship service or participating in sacramental use of bread

14 and wine. Cutter v. Wilkinson, 544 U.S. 709, 720 (2005). A court reviewing a claim under the

15 RLUIPA "begin[s] by identifying the 'religious exercise' allegedly impinged upon." Greene v.

16 Solano Cty. Jail, 513 F.3d 982, 987 (9th Cir. 2008). The "initial RLUIPA step requires a narrow

17 inquiry focused on (1) the specific religious practice at issue and (2) the specific practitioner."

18 Johnson v. Baker, 23 F.4th 1209, 1215 (9th Cir. 2022).

19       Defendants do not dispute the sincerity of plaintiff's subjective intent to use the

20 confiscated bottles of ink for his religious exercise. (UF 29, 31, 33, 41.) Therefore, the court

21 considers whether the prison regulation at issue substantially burdens the religious exercise at

22 issue. Johnson, 23 F.4th at 1215. Courts "do not take a narrow view of what constitutes a

23 'substantial burden.'" Id. A substantial burden on religious exercise imposes a significantly great

24 restriction or onus upon such exercise. Warsoldier v. Woodford, 418 F.3d 989, 995 (9th Cir.

25 2005) (quoting San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir.

26 2004)). A regulation that outright bans religious exercise is a substantial burden, but lesser

27 restrictions may suffice. See Johnson, 23 F.4th at 1215 (regulation limiting the use of scented oil

28 ////

1   during prayer to a single prayer out of 35 prayers per week substantially burdened prisoner's
2   religious exercise).

3        Plaintiff argues the CDCR regulation at issue prevents him "from possessing colored ink
4   to write out what was required" during his religious exercise. (ECF No. 60 at 12.) Defendants
5   argue the policy did not substantially burden plaintiff's religious exercise because he could have
6   used "ink in some amount less than what could fit within the confiscated bottles" without
7   violating the policy. (ECF No. 40-2 at 12; ECF No. 61 at 2.) It remains unclear how plaintiff
8   might have used an ink-dipped feather as required for his religious exercise without violating
9   CDCR's anti-tattoo policy. Plaintiff makes a prima facie case that the regulation at issue
10  substantially burdens his religious exercise at issue under the RLUIPA.

11       The burden shifts to defendants to show the regulation is "(1) in furtherance of a
12  compelling governmental interest and (2) the least restrictive means of serving that interest."
13  Johnson, 23 F.4th at 1216 (citing 42 U.S.C. § 2000cc-1(a) and Holt v. Hobbs, 574 U.S. 352, 362
14  (2015)). "[C]ourts must take adequate account of the burdens a requested accommodation may
15  impose on nonbeneficiaries." Cutter, 544 U.S. at 720. RLUIPA does not elevate accommodation
16  of religious observances over an institution's need to maintain order and safety and an
17  accommodation must not override other significant interests. Id. at 722.

18       Preventing public health risks that flow from inmate tattooing is a compelling
19  governmental interest furthered by CDCR's anti-tattoo policy. (ECF No. 40-4 at 29 (Kinross
20  Decl., ¶ 8).) Bottled ink is problematic because of its possible ready use for tattooing. (ECF No.
21  40-4 at 29 (Kinross Decl., ¶ 7).) However, defendants make no attempt to show application of the
22  regulation at issue, with no exceptions for plaintiff's religious exercise, is the least restrictive
23  means of serving that interest. Finding no record evidence to support such a conclusion, the
24  undersigned recommends the motion for summary judgment be denied as to the RLUIPA claim
25  against Warden Fox for prospective injunctive relief.

26       **C.  QUALIFIED IMMUNITY**

27       Qualified immunity shields government officials from monetary damages unless their
28  conduct violated "clearly established statutory or constitutional rights of which a reasonable

1   person would have known." <u>Kisela v. Hughes</u>, 138 S. Ct. 1148, 1152 (2018). "In evaluating a

2   grant of qualified immunity, a court considers whether (1) the state actor's conduct violated a

3   constitutional right and (2) the right was clearly established at the time of the alleged

4   misconduct." <u>Gordon v. County of Orange</u>, 6 F.4th 961, 967-68 (9th Cir. 2021) (citing <u>Saucier v.</u>

5   <u>Katz</u>, 533 U.S. 194, 200-01 (2001), overruled in part by <u>Pearson v. Callahan</u>, 555 U.S. 223

6   (2009)). "[I]f the answer to either [question] is 'no,' then the state actor cannot be held liable for

7   damages." <u>Id.</u> at 968 (citation omitted).

8          Under the first prong of the qualified immunity analysis, triable facts exist regarding

9   whether the conduct of defendant Kinross and defendant Gilliam violated plaintiff's First

10  Amendment rights. As to the second prong, defendants summarily conclude the evidence

11  establishes no reasonable person in these defendants' positions would construe their conduct as

12  having violating plaintiff's free exercise rights. (ECF No. 40-2 at 13.)

13         It was clearly established prior to 2018 that a prison official violates the Free Exercise

14  Clause by substantially burdening an inmate's religious exercise without a valid basis that is

15  reasonably related to legitimate penological interests. <u>See</u> <u>Shakur</u>, 514 F.3d at 883-84; <u>see also</u>

16  <u>Rouser v White</u>, 630 F. Supp. 2d 1165, 1201-02 (E.D. Cal. 2009) (denying qualified immunity

17  from Wiccan inmate's free exercise claim for a sweat lodge where defendants produced

18  inadequate evidence showing their conduct was reasonable under the <u>Turner</u> factors). Viewing the

19  facts in the light most favorable to plaintiff, a fact finder could determine defendant Kinross and

20  defendant Gilliam violated plaintiff's clearly established free rights. Defendants are not entitled to

21  qualified immunity on plaintiff's free exercise claim at this stage.

22         In addition, qualified immunity "does not bar actions for declaratory or injunctive relief."

23  <u>Presbyterian Church (U.S.A.) v. United States</u>, 870 F.2d 518, 527 (9th Cir. 1989) (citing <u>Harlow</u>

24  <u>v. Fitzgerald</u>, 457 U.S. 800, 806 (1982).) This includes the RLUIPA claim against Warden Fox

25  for prospective injunctive relief.

26  **VI.  CONCLUSION AND RECOMMENDATION**

27         In accordance with the above, IT IS HEREBY ORDERED that the findings and

28  recommendations filed on August 23, 2021 (ECF No. 54) are VACATED.

1    In addition, IT IS RECOMMENDED that defendants' motion for summary judgment

2  (ECF No. 40) be granted in part and denied in part, as follows: GRANTED as to the First

3  Amendment claim against defendant Appleberry; DENIED as to the First Amendment claims

4  against Kinross and Gilliam; and DENIED as to the RLUIPA claim against Warden Fox for

5  prospective injunctive relief.

6    These findings and recommendations are submitted to the United States District Judge

7  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14)

8  days after being served with these findings and recommendations, any party may file written

9  objections with the court and serve a copy on all parties. Such a document should be captioned

10  "Objections to Magistrate Judge's Findings and Recommendations." Any response to the

11  objections shall be filed and served within seven (7) days after service of the objections. The

12  parties are advised that failure to file objections within the specified time may waive the right to

13  appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

14  Dated:  July 11, 2022

15

16

17  elia2106.msj.2

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

14